UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC A. DEMPSTER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKZI, Acting Commissioner of Social Security<br><br>　　　　Defendant. | Case No.  2:21-cv-01393-JDP (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 16 & 21 |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 16 & 21. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's is denied, and this matter is remanded for further proceedings.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards were applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a

1  conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

2  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

Plaintiff filed an application for DIB on December 27, 2018, alleging disability beginning June 4, 2018. Administrative Record ("AR") 179-85. After his application was denied initially and upon reconsideration, plaintiff appeared and testified at a hearing before an ALJ. AR 15-55, 66, 78. On September 25, 2020, the ALJ issued a decision finding that plaintiff was not disabled. AR 83-104. Specifically, the ALJ found that:

    1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2020.

    \* \* \*

2

2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of June 4, 2018, through his date last insured of March 31, 2020.

* * *

3. Through the date last insured, the claimant had the following severe impairments: herniated disc of the cervical spine with myelopathy, angina, and obstructive sleep apnea.

* * *

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

* * *

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he cannot reach overhead, bilaterally; he can push and/or pull with his left, non-dominant, upper extremity occasionally; and, he can handle and finger frequently with his left, non-dominant, upper extremity.

* * *

6. Through the date last insured, the claimant was unable to perform any past relevant work.

* * *

7. The claimant was born on February 15, 1975 and was 45 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national

economy that the claimant could have performed.

\* \* \*

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 15, 2014, the alleged onset date, through March 31, 2020, the date last insured.

AR 89-100 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 1-9. He now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Analysis

Plaintiff advances two primary arguments. First, he argues that the ALJ improperly found his mental impairments to be non-severe. ECF No. 16-1 at 11-13.[1] Second, he argues that the ALJ discounted his subjective symptom testimony without providing clear-and-convincing reasons for doing so. *Id.* at 14-18. I agree that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective symptom testimony, and grant summary judgment for plaintiff on that basis.

At his hearing, plaintiff testified that his herniated disc prevents him from remaining in one position for more than fifteen minutes without severe neck pain and left arm numbness. AR 29. He often drops relatively light items and cannot lift anything of significant weight due to weakness and numbness in his left arm. AR 30. In his written testimony, he alleged that he experiences severe pain "24 hours a day," that he has numbness in his arm, pain in his shoulder, shortness of breath, chest pain, fatigue, and headaches. AR 223. He added that even quarter-mile walks to the grocery store require him to "stop many times for rest because of severe chest pains." AR 223. He alleges that these symptoms have prevented him from holding a full-time job. AR

---

[1] Plaintiff also contends—as a third argument—that the ALJ's step-five findings were not supported by substantial evidence. ECF No. 16-1 at 13-14. However, because this argument is predicated entirely on the merits of his first argument, it is better read as an argument as to why the ALJ's purported error at step two is not harmless. *Id.* (arguing that, because plaintiff's "mental impairments are 'severe' as defined in the regulations, his resulting limitations should have been included in the ALJ's RFC finding and vocational hypothetical"). Because I do not reach plaintiff's first argument, I decline to reach this argument.

32-33 (explaining that he tried to work at McDonalds but was unable to stand for a full shift and that he tried to work at a photo lab but couldn't sit for a full shift).

At steps two and three, the ALJ found that plaintiff had a herniated disc of the cervical spine with myelopathy, angina, and obstructive sleep apnea, and she found that these physical impairments were severe. AR 89-90. She then found that plaintiff retained the residual functional capacity ("RFC") to perform "light work . . . except he cannot reach overhead, bilaterally; he can push and/or pull with his left, non-dominant, upper extremity occasionally; and, he can handle and finger frequently with his left, non-dominant, upper extremity." AR 95.[2] She reached this conclusion by finding that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 96.

In the Ninth Circuit, courts follow a "two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). If the claimant meets this requirement and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id*. The ALJ's reasons must also be supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The Commissioner argues that the ALJ gave sufficient reasons for discounting plaintiff's testimony: namely, that his testimony was inconsistent with the objective medical evidence, evidence of his daily activities, and evidence that he had either worked or held himself out as

---

[2] "Occasionally" and "frequently" are terms of art under the Social Security regulations: occasionally means "very little up to one-third of the time"; frequently means "from one-third to two-thirds of the time." SSR 83-14, 1983 WL 31254, at *2 (1983).

capable of working. ECF No. 21 at 12. The ALJ's reasons for discounting plaintiff's testimony do not satisfy the "clear and convincing" standard, particularly as they pertain to his allegations of pain, numbness, and weakness in his arm and neck.

First, the ALJ's discussion of the medical evidence is insufficient to show that plaintiff's testimony was not creditable. Indeed, the ALJ's lengthy catalogue of the medical evidence overwhelmingly corroborates plaintiff's account of symptoms stemming from his herniated disc. *See, e.g.*, AR 96 ("[T]enderness to palpation of the neck and reduced range of motion secondary to pain . . . . [P]oor muscle tone of the cervical spine with moderate pain during motion testing"); 97 ("[G]ood strength and full range of motion, except in the left upper extremity, which was notable for a slight wrist drop with triceps and brachial radialis weakness and numbness going down his left arm to thumb and index finger."). The ALJ notably rejected the opinions of both state medical examiners as inconsistent with "observations of the claimant's reduced cervical range of motion and left shoulder, as well as numbness of the left upper extremity." AR 97.

The Commissioner acknowledges the consistent medical evidence, but notes that the ALJ also found that "[p]hysical examinations throughout the period at issue revealed no cervical or left arm limitations." *Id.* (citing AR 98). However, in support of this characterization, the ALJ cited to only two medical appointments—one from May 2020 and one from March 2020. *See* AR 98 (citing AR 639, 713). The cited medical records indicate that plaintiff had sought the appointments because of pain in his foot and ankle, and neither record contains more than a single line of notes regarding his neck or arm. AR 639 & 712. Moreover, neither the ALJ nor the Commissioner explains how this assertion can be reconciled with either the limitations that the ALJ assessed in the RFC—which presuppose at least some left arm limitations—or the other extensive medical records corroborating plaintiff's testimony. Such a general juxtaposition of select record evidence with a catalogue of plaintiff's symptom-related testimony is insufficient. "'[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must *explain* what evidence undermines the testimony.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (emphasis added by the *Brown-Hunter* court)).

The ALJ's discussion of plaintiff's activities fails to provide clear-and-convincing reasons to discount his testimony. As it pertains to plaintiff's back, neck, and arm impairments, she primarily highlighted that plaintiff "reported that he did yoga, without indicating that he deferred certain activities due to musculoskeletal issues." AR 98 (citing 633). The ALJ selected this statement—a single line stating only that he "does yoga and this seems to help"—from a neurosurgical consultation record that, in all other respects, overwhelmingly corroborates plaintiff's account. AR 633-34. The record reveals that plaintiff had sought surgery for "significant left upper extremity pain" and that he had "exhausted conservative therapy," including "[five] injections without help" and "at least a year [of] physical therapy without sustained relief." AR 633. It also states that he "used to drive a concrete mixer . . . but has had to quit that because he was no longer able to tolerate the pain," and that plaintiff reported "decreased function with his left arm[,] decreased range of motion, pain and numbness with weakness." AR 633. Considering this information, along with findings of a "slight left wrist drop with triceps and brachial radialis weakness[, and] numbness go[ing] down the superior portion of his left arm to his thumb," the neurosurgical specialist recommended a surgical intervention. AR 633-34. There is no evidence of the length, regularity, or nature of the yoga that plaintiff purportedly did—or, importantly, whether it involved pushing, pulling, handling, or fingering with his left upper extremity. *See* AR 633. In the absence of such information, or any additional explanation, it is unclear how an errant statement about doing yoga supports a finding that plaintiff can "handle and finger" with his left hand for as much as two-thirds of an eight-hour workday for five days each week. AR 98, 633-34; *see supra*, note 2.[3]

---

[3] The ALJ also suggested that plaintiff's use of a bike for transportation undermined his allegations that he was severely limited due to angina. AR 98. Plaintiff objects that he has been forced to use a bike for transportation since he lost his driver's license, and he notes that his doctors have encouraged him to stop. ECF No. 16-1 at 16 (citing AR 712). Moreover, the record reflects that he fell and injured himself while biking, that he showed "elevated blood pressure" after riding his bike to the doctor, and that, due to his foot impairments, his use of a bike is limited to rolling while pushing with one foot. AR 35, 275, 682. Thus, in the absence of additional detail, his use of a bike amounts to—at most—a weak reason to discount the alleged severity of his angina symptoms. Neither the ALJ nor the Commissioner suggests that it constitutes a reason to discount his allegations of back, neck, and arm pain.

1      Finally, the ALJ provided two additional reasons that "the claimant is more functional
2 than alleged with respect to working": (1) "[o]n June 6, 2018, the claimant reported that he was
3 cooking in the jail kitchen four days per week to pay for an ankle bracelet for house monitoring,
4 without reports of difficulties performing cooking tasks"; and (2) "the claimant received
5 unemployment insurance, which generally requires the claimant to assert that he is able to work
6 and is contrary to his allegations made herein that he is unable to work." AR 98 (citing AR 275,
7 207). The first of these reasons mischaracterizes the record. The ALJ cites a page of plaintiff's
8 treatment records that contains a single line indicating that plaintiff reported "cooking at the jail
9 house kitchen for 4 days to help pay for [the ankle bracelet] because he otherwise could not afford
10 it." AR 275. There is no evidence that plaintiff performed this work on a weekly basis—as the
11 ALJ asserted—or even for more than four days; neither is there evidence about the length of his
12 shifts, the nature of the work, or whether he was provided any accommodations for his disability.
13 *See* AR 633. Regarding the second reason, the Ninth Circuit has stressed that the receipt of
14 unemployment benefits is not a valid reason to discount plaintiff's testimony where, as here, the
15 record "does not establish whether [plaintiff] held himself out as available for full-time or part-
16 time work. Only the former is inconsistent with his disability allegations." *Carmickle v.
17 Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Plaintiff specifically alleged
18 that he had attempted to work shorter shifts, or less-then-full time positions, but that he had been
19 unable to find work that accommodated his impairments. *See* AR 32-33. Neither the limited
20 evidence of his work at the jail kitchen nor his application for unemployment benefits amounts to
21 a legitimate reason to discount his alleged inability to sustain work activity "8 hours a day, for 5
22 days a week, or an equivalent work schedule." SSR 96-8p; *see also Lewis v. Apfel*, 236 F.3d 503,
23 514 (9th Cir. 2001).
24      The ALJ's failure to set out specific, clear, and convincing reasons to discount plaintiff's
25 subjective symptom testimony deprives the court of the ability to determine whether her
26 conclusions are supported by substantial evidence. This error warrants remand to allow for
27 proper consideration of the evidence of record. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir.
28 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or

without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 16, is granted.
2. The Commissioner's cross-motion for summary judgment, ECF No. 21, is denied.
3. The matter is remanded for further proceedings consistent with this order.
4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

IT IS SO ORDERED.

Dated:   February 21, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE